The next case on the calendar is Cryer Precision v. Bennett's Bill Printing. Good morning, Your Honors. Robert Horowitz of Greenberg Traurig for the Appellants, Cry Precision, and Linely, LLC. Your Honors, the District Court committed several reversible errors in this case. First, it refused to enforce the covenants even during the term of the license agreement, and it did so for two invalid reasons. First, it found that the covenant created undue hardship based on a tortured reading of the covenant, namely that the covenant could be read to prohibit Bennettsville, the licensee, from making any camouflage design other than the license design. I'll get into details in a little bit later. It also erred by requiring express geographic limitation and ignored the fact that the limitation was implicit based on the scope of the intellectual property involved and the scope of the license agreement. Second, it refused to enforce Section 7 of the license agreement post-expiration. And it's important to note that this provision was severable, so the Court was free to say that the covenant was enforceable during the term of the agreement and not enforceable after the term of the agreement. But that would require blue-penciling, right? Because the provision didn't say that. There's an express provision in the agreement, Section 14.4, where the parties expressly agreed that to the extent necessary, any covenant will be modified to make it enforceable. And there we're not talking about blue-penciling.  Finally, and what I just referred to, the Court failed to enforce the parties' express agreement in Section 14.4, that to the extent the covenant was unenforceable, it will be modified to the least extent necessary to make it enforceable. So there are two covenants that were at issue in this case. One is Section 1.4. And all Section 1.4 requires is that if the licensee is to make a product that's a variation or a modification of the licensed product, it must first get that new product added as a licensed product and assigned a licensing fee. That's a provision that could only be applicable during the term of the agreement. The second covenant is Section 7, which could be applied on its face both during and after expiration of the agreement. And it prohibited Bennettsville from making products confusingly similar to or constituting a derivative work of the intellectual property that Crye licensed under the agreement. So the district court refused to enforce the agreement, the covenant, I'm sorry, even during the term of the agreement while Bennettsville was enjoying the benefits of the license agreement. Now, even if the Court were to treat Section 7 as a pure non-compete agreement and we disagree with that because it's not a non-compete agreement, there's no reason why Crye shouldn't enjoy the benefits of its bargain at least during the term of the agreement. And I doubt this Court would ever have any difficulty in enforcing a covenant, for example, in a Ford dealership agreement, prohibiting the Ford dealer from selling Chevys during the term of the agreement. I can't believe that that would ever be subject to an argument that it's unenforceable. And even in the case of Crye v. Duro, which was a case that was a predecessor to this one, it was an earlier case, which involved a much broader restrictive covenant that was ultimately held to be unenforceable after expiration of the license agreement, Judge Coates seemed to suggest that the issue of enforceability would only arise post-expiration, and we cite that footnote in our brief. So courts in New York and elsewhere require that to be enforceable, a restrictive covenant must be reasonable in scope and it must be narrowly tailored to protect that legitimate business interest. So looking at the covenants at issue here, first does Crye have a legitimate business interest in enforcing the covenants? The district court acknowledged that Crye has a legitimate business interest in protecting its intellectual property and that Section 7 of the license agreement is directed at protecting Crye's intellectual property. That ruling was the same conclusion that Judge Coates reached in the Duro case. Next, was there a durational limitation? And when we're talking about enforcement of the covenant during the term of the agreement, there's necessarily a durational requirement. It ends at the expiration of the term of the agreement. And Judge Block in the district court acknowledged that fact. Are you conceding the claim as to beyond the term of the agreement? No, we're not, Your Honor. It raises a little bit of a different question, and I'll get to that later on. It's a more difficult issue. This one, we think, is straightforward and, frankly, a rather simple one. Was there a geographic limitation? Now, the law is clear that you don't need necessarily a durational and a geographic limitation. You need a durational or a geographic limitation. But to the extent there is a requirement that there be a geographic limitation, which we don't think there is, again, it was implied based on the geographic scope of the license of the IP to the USA, and that's the market in which the cry competes. You know, the agreement does contain a survival clause, which purports to keep the restrictive covenants in effect in perpetuity. So do we look at this as just a two-year agreement, or do we look at this as something that purports to continue in perpetuity? When we're dealing with the position is that it's in perpetuity, I assume. When we're talking about enforcement during the term of the agreement, it's coextensive with the term of the agreement. Beyond that, it would be in effect for the life of the intellectual property that the covenant was designed to protect. So it would be for the life of the design patent. In essence, you're asking us to blue pencil it, then. You're asking us to strike the perpetuity provision and to treat it as only, in essence, to write in a two-year limitation. All right. I don't think it's writing it in because I think it's clear from the agreement that it says that it's during the term of the agreement and post-expiration. All the Court has to do is sever that, which is consistent with the party's agreement in Section 14.4. And then the other critical point is the Court's tortured reading of the agreement. The Court found undue hardship because the agreement could be read to prohibit Bennettsville from making any camouflage design. And, in fact, the covenant prohibits derivative works. That's a term of art. If it's a derivative work, it's necessarily an infringing product. It infringes the copyright. And the other standard under the covenant is the confusingly similar to IP, to Cry's IP. And we set forth in our brief all of the cases that deal with confusingly similar or apply confusingly similar in the context of IP cases. So it's not beyond this Court's or any other Court's ability to determine whether or not two designs are confusingly similar to each other. So the Court was wrong in reading that provision so broadly. Thank you. May it please the Court. My name is John Hollis. I'm from the law firm Loeb & Loeb. I'm appearing today on behalf of Bennettsville Printing. I think to simplify this case, the Court should look at it from the standpoint of, how is this different from Duro? And I submit to the Court that it's different from Duro in two ways. First, you have the substitution of the language confusingly similar for the term similar in the restrictive covenant at issue. Secondly, it's different from Duro in that Duro's already been decided. And that is an important point, but I want to come back to it. Let me shift gears a little bit and emphasize the fact that Bennettsville Printing never enjoyed the fruits of the license at issue. Bennettsville Printing never printed Multicam, which is Crye's pattern. Bennettsville Printing printed Scorpion W-2, which is a different camouflage pattern that is owned by the United States government, and it printed Scorpion W-2 only pursuant to orders from the United States Army. That's a critical point because there are three separate grounds upon which this Court can affirm Judge Block's decision granting summary judgment. The first is to find that there simply was not an enforceable agreement here because the parties never came to an agreement on the essential term of price. The second is to follow Judge Block's reasoning, which in turn followed this Court's reasoning in Duro, affirming Judge Coates' decision granting summary judgment against Crye. And to follow that reasoning in finding that the Section 7 restrictive covenant is overbroad as a matter of New York law and unenforceable because it does not contain any geographic or temporal limitation, and furthermore, that it is unduly burdensome on Bennettsville because it would prevent Bennettsville from printing other camouflage patterns. Your adversary says that Duro is inapplicable because the issue here is the enforceability of this restrictive covenant during the term of the license as opposed to after expiration. He does try to make that argument, Your Honor, but part of the problem with that argument is that it relies on a false distinction of enforceability of this provision during the term of the license versus after the expiration of the license. And as Judge Chen aptly pointed out, because of the survivability clause of the license, the restrictive covenant at issue continues in perpetuity. Crye really wants to have it both ways in this situation. They want to rely on the continuing effect of the provision post-expiration, but they want to at the same time somehow say that the Court should look at the enforceability during the term of the license as something different than the ongoing effect of the restriction, which is what the license actually says. And Crye is indeed asking this Court to blue-pencil not only the geographic and temporal limitations of the restrictive covenant, which on the face of the agreement don't exist, this notion that, for instance, the national scope of the limitation should be implied merely by the existence of Crye's IP rights, which aren't — that restriction is nowhere referenced in the license agreement. That's only one example of the modifications to the plain language of this agreement that Crye invites this Court to make in order to render this restrictive covenant enforceable. There is no reason for this Court to take that invitation. It was not an abuse of discretion for Judge Block to decline to blue-pencil this agreement any more than it was an abuse of discretion for Judge Cote to decline to blue-pencil the 2012 license agreement, as this Court affirmed in Duro. I led off by stating that there were three grounds for affirmance. I got through two. The third one brings me back to this point that I made initially about the fact that Crye — pardon me — that Bennettsville only acted at the behest of the Army. The Army is Bennettsville's only customer, which is a key fact for considering the third ground of affirmance, which is this. Even if this Court were to find that Section 7, assuming arguendo, that it could be enforceable, there's no breach of contract here. The reason for that is that it has already been definitively adjudicated that there is no confusion. The distinction between Multicam and Scorpion W-2 is not a basis for a finding of confusion. Judge Cote found that in Duro. That finding was affirmed by this Court in its decision in Duro. Below in the opinion on appeal, Judge Block agreed with that finding, that there's no basis for a finding of confusion in this case because the only customer, the only consumer is the United States Army. The United States Army developed Scorpion W-2. It owns Scorpion W-2. And it ordered Scorpion from Bennettsville by name. It has been definitively determined that there is no possibility of confusion on the part of the U.S. Army between Multicam and Scorpion W-2. CRY did not appeal from that determination. Therefore, it's law of the case. That is one of the reasons why this Court should decline any invitation from CRY to certify any question about the enforceability of this provision to the New York Court of Appeals. It's an issue that counsel has not raised an argument today, but it's in their briefs. The standard for certification would require not only that there is no binding authority from the court of appeals on point, which there is. One example of that is BDO-Simon v. Hirshberg, N.Y. 93, N.Y. 2nd, 382, 1999. It's one of a number of court of appeals decisions that recites the analysis for restrictive covenants that's applicable here. But as importantly, the other prong of the test for a certified question is that it would be determinative of the case. And because of this existing determination that there's no confusion, it would not be outcome determinative here. If there are no questions from the panel, I'll yield the remainder of my time. Thank you. Your Honors, there's a vast difference between the covenant at issue in the Duro case versus the covenant at issue in this case. In Duro, the issue, the restriction was you couldn't make a product similar to multicam, and the court held there and Judge Block acknowledged that that could prohibit any camouflage pattern. That certainly is not what is prohibited by the covenant at issue in this case, which requires it be confusingly similar or a derivative work, not even just to multicam, but to Kreis intellectual property. How do you respond to the argument that there's no likelihood of confusion because there's only one customer for the Scorpion fabric? That's an issue that's relevant to a trade dress claim, which we didn't, which is what was decided in Duro and Bennettsville. No risk of confusion. How is there a breach? There doesn't have to be a likelihood of confusion. The issue is if you look at the two designs side by side, are they confusingly similar, or is it a derivative work? Is it an infringement of Kreis copyright? That is a very narrow and well-defined term of art in intellectual property law. Why don't you pursue that then against the Army? I'm sorry, Your Honor? Why don't you pursue that theory against the Army? We may do that, Your Honor, but we don't have to. We purposely entered into an agreement, a contract with the printers,  infringement claims that would have to be asserted against the Army. We've got the right to do that in a private contract with our licensees. Mr. Hollis referred to a basis for the Court to affirm being that there wasn't an agreement on the essential terms. Judge Block ruled that there was an agreement on the essential terms, and Bennettsville did not appeal from that. And then finally, Mr. Hollis ---- Your argument is that there's not ñ the New York courts have not said very much about noncompetes within licensing agreements between two commercial entities of this sort here. So to the extent that there's confusion about whether this is a noncompete and how reasonable it is, that the New York Court of Appeals might be able to shed some light on that question. Well, that's correct, Your Honor. It's the difference between a noncompete generally and a contract like ñ and a covenant like this one that's designed to protect intellectual property. The last point I want to make is Mr. Hollis made the argument that the government owns Scorpion W-2. The government has a utility patent that covers the colors and the proportions of colors that are present in Scorpion W-2. That does not mean, by clear black letter law, that does not mean that that design does not infringe Cry's intellectual property, and it doesn't prevent Cry from claiming that it does, in fact. And if you look at the designs side by side, I think it's pretty clear that they, at the very least, are confusingly similar derivative works. Thank you. Thank you both. That's the last case on the calendar to be argued this morning. So I'll ask the clerk to adjourn court. Court is adjourned. Thank you.